IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DUSHAWN LEVERT GARDNER, | : | CIVIL ACTION NO. **1:CV-11-1312** |
| Petitioner | : | (Judge Caldwell |
| v. | : | (Magistrate Judge Blewitt) |
| WARDEN RONNIE HOLT, | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Procedural Background.**

On July 14, 2011, Petitioner Dushawn Levert Gardner, an inmate at USP-Canaan, Waymart, Pennsylvania, filed, *pro se*, the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner also filed a support brief with attached exhibits and a Motion for leave to proceed *in forma pauperis*. (Docs. 2 and 3). On July 19, 2011, we issued an Order and denied Petitioner's Motion for leave to proceed *in forma pauperis* since he had $90.33 in his inmate account. (Doc. 5). Subsequently, Petitioner paid the filing fee. (Doc. 9). Petitioner was allowed to amend his brief by adding five pages. (Docs. 7 and 8). Attached as exhibits to his brief, Petitioner includes pages from his transcript in his criminal trial in the Eastern District of North Carolina, as well as portions of the Court's jury instructions in his criminal trial.

In his instant habeas petition, Petitioner Gardner basically claims that he is actually innocent of his RICO convictions since the trial court failed to give the jury the full definition of a pattern of racketeering activity. Petitioner also states that "the government never proved beyond a reasonable doubt that [he] knowingly conducted the enterprise's affairs or participated, directly or indirectly,

in the conduct of the enterprise's affairs through a pattern of racketeering activity." (Doc. 2, p. 5).

Named as Respondent in the present habeas petition is Ronnie Holt, the Warden at USP-Canaan.[1]  The habeas petition has not yet been served on Respondent for a response.

We now give preliminary consideration to the Habeas Petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1 (b)). *See Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979); *Romero v. Holt*, 2006 WL 3437360 (M.D. Pa.); *Winfield v. Martinez*, 2008 WL 4541945 (M.D. Pa.); *Francis v. U.S.* , 2009 WL 1010522 (M.D. Pa.); *Rivera v. Scism*, Civil No. 10-1773, M.D. Pa.[2]

## II.  Factual Background.

Petitioner was convicted on November 11, 1996, following a jury trial, in the United States District Court for the Eastern District of North Carolina.  (Doc. 2, pp. 2-3).  Petitioner indicates that he was convicted of violations under the following statutes: 18 U.S.C. § 1961(1) and (5), 18 U.S.C. § 1962(d), 21 U.S.C. § 846, 18 U.S.C. § 1959(a)(5), 18 U.S.C. § 1959(a)(1) and 2, 18 U.S.C. §§ 2119(3) and 2, 18 U.S.C. §§ 924(j) and 2, 18 U.S.C. § 1201(c), and 18 U.S.C. § 2.  (Doc. 1, p. 2).

---

[1]Petitioner named the correct Respondent since he is presently confined at USP-Canaan and Holt is the Warden at this prison.  *See* 28 U.S.C. § 2242 and § 2243.  *See Rivera v. Scism*, Civil No. 10-1773, M.D. Pa.  Petitioner also correctly filed his Habeas Petition with this Court since he is incarcerated in the Middle District of Pennsylvania.  *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

[2]Rule 4 provides in relevant part: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

Petitioner was sentenced in the stated case in March 1997 to life imprisonment plus 120 months. (Doc. 1, p. 2). Petitioner was convicted of being part of a drug trafficking enterprise and he was convicted, in part, of racketeering offenses under the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), in violation of 18 U.S.C. § 1961 and §1962, along with several related offenses. (*Id*.). Petitioner indicates that he directly appealed his conviction and sentence to the Fourth Circuit Court of Appeals. The Fourth Circuit affirmed his judgment of conviction on August 9, 2002. (Doc. 2, p. 3). *See U.S. v. Celestine*, 43 Fed.Appx. 586 (4th Cir. 8-9-02). Petitioner states that the U.S. Supreme Court denied his October 16, 2002 Writ of *Certiorari* on December 2, 2002. (*Id*.). *See Gardner v. U.S.*, 537 U.S. 1061 (12-2-02).

According to the Fourth Circuit Court of Appeals, the following was the background to the federal RICO charges on which Petitioner convicted:

> Roneka Jackson was a sometimes girlfriend of appellant Dushawn Gardner and a mother of one of his children. She occasionally sold drugs for the group and was involved in the details of its operations. In August 1995, Dushawn and Barkley Gardner asked her to help them get Dushawn's van to New York. They were avoiding authorities in North Carolina who were investigating the group's criminal activities, and they wanted to return to New York undetected. Appellant Bernard Celestine then suggested that while they were staying away from North Carolina, they could sell drugs in Baltimore for a while to make money. Celestine, Jackson, and Dushawn Gardner spent several days there before returning to New York for more drugs. They made several trips between Baltimore and New York.
> During that time, Jackson phoned her mother and said that she was in New York with Dushawn Gardner. Jackson later reported to her mother and to a detective with whom she had worked in the past that she had gone to New York with the Gardners and Celestine because she was promised a car, new clothes, and money for her own apartment in exchange for her assistance. She said she wanted to leave but that the group was watching her and following her to the bathroom with a gun at her back, and that she did not have enough money to get home to North Carolina. When the group was in Baltimore again, she got away and a friend paid for her to stay in a motel for two nights.

> Dushawn Gardner and Celestine tracked her down, removed her from the motel room at gunpoint, and returned to New York where they decided to kill her. Because they could not find a gun, they broke her neck, doused her with gasoline, and lit her on fire. All the while, she pleaded for mercy and promised not to tell.

43 Fed.Appx. at 589-590.

In his appeal of his conviction and sentence to the Fourth Circuit Court of Appeals, Petitioner argued, in part, "that the district court failed to instruct the jury that the government was required to prove beyond a reasonable doubt that the racketeering acts charged in the indictment were both horizontally related and vertically related." *Id*. at 590. The Fourth Circuit Court of Appeals found that the district court's jury instructions "adequately conveyed the meaning of both terms." *Id*.

The Fourth Circuit Court of Appeals then held as follows:

> To satisfy the requirements of *H.J. Inc.,* the jury instruction at least must incorporate the concept of continuity. *See H.J. Inc.,* 492 U.S. at 240-42. The court finds that the instant instruction does so. The Eleventh Circuit approved an almost identical instruction which failed to specifically mention continuity, but stated that there must be a pattern of activity and not just a series of separate isolated or disconnected acts. *See United States v. Kotvas,* 941 F.2d 1141, 1144-45 (11th Cir.1991). Here, the jury was instructed that the acts had to be "connected with each other by some common scheme, plan or motive so as to be a pattern of activity, and not merely a series of separate, isolated, or disconnected acts." The term of the threat of continuing activity. *See Kotvas,* 941 F.2d at 1144-45. Thus by requiring the jury to find a pattern of activity, and not just isolated acts, the district court instructed the jury on continuity. *See id*. Moreover, the defendants' proposed jury instructions do not contain any greater elaboration on the continuity requirement than the instruction given by the district court.FN2 The court therefore finds that the district court did not abuse its discretion in instructing the jury on this count.
> FN2. The proposed instruction stated only that the jury must find beyond a reasonable doubt that each defendant participated in the affairs of the Enterprise through a pattern of Racketeering activity as described in the Indictment through the knowing and willful or deliberate commission of at least two Racketeering acts within ten years of each other." J.A. 1909.

43 Fed.Appx. at 591.

Petitioner indicates that he did not file a motion with the sentencing District Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1, p. 4).

### III. Claims of Habeas Petition.

As mentioned, Petitioner claims, in part, that the trial court failed to instruct the jury on the full definition of a pattern of racketeering activity. Specifically, Petitioner states:

> At the commencement of the petitioner's trial, he timely objected to the jury instructions requiring that the government prove beyond a reasonable doubt that the racketeering acts are horizontally related and vertically related and that the government provided that the acts amount to, or threaten, the likelihood of continued criminal activity. The government even conceded that the instruction failed to specifically require the government to prove the continuity requirement. Nevertheless, the lower court held that the instruction included these specific requirements. In doing so, the Court violated its own precedent. H. J. Inc. makes these instructions that were given failed to include either of the requirements.
>
> The district court improperly instructed the jury regarding the elements of a RICO offense and regarding the law on the other conspiracy counts.

(Doc. 2, pp. 3-4).

Petitioner further states:

> The petitioner asserts that, the court's jury instructions which necessitates (sic) the two probing analytical approach required to satisfy the pattern of racketeering activity under RICO, were never established or given, with regards to relatedness and continuity at his trial, and that, the government never proved beyond a reasonable doubt that the petitioner knowingly conducted the enterprise's affairs or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

(Doc. 2, p. 5).

Petitioner also states that, "the enterprise and the pattern of racketeering activity" are two separate (sic) and distinct entities, that must be proven, and the court never gave the instructions that, enterprise had to be separate (sic) and distinct. (Doc. 2, p. 8).

Additionally, Petitioner claims that the trial court gave the jury a "vague definition of reasonable doubt" and that the government never proved and the jury was not instructed that the government had to prove that he "committed a pattern of [§] 1962(c) violations." (*Id*., p. 9).

Moreover, Petitioner states:

> The petitioner asserts that, in the instant case, his argument is that, the racketeering predicates alleged in his indictment and/or what he is convicted of was (sic) a series of disconnected acts, without any similar purposee (sic) results, participants, victims or method of commission, and, the predicate acts constituting part of a single scheme can never support a cause of action under RICO. It is clear that, over the timely objections to the jury instructions, at trial, on appeal, certiorari, and post habeas requests], that the required jury instruction for the government to prove beyond a reasonable doubt a pattern of racketeering acts, the horizontal and verticial (sic) relationship were never proven by the government.

(Doc. 2, pp. 10-11).

Thus, Petitioner concludes that the flawed jury instructions given by the trial court relieved the government of its burden of proving beyond a reasonable doubt that he was engaged in a pattern of racketeering acts through an existing enterprise. (*Id*., p. 12).

As relief, Petitioner requests this Court to "immediately release [him] from illegality (sic) of his detention." (*Id*., p. 13).

**IV. Discussion.**

We find that Petitioner's present § 2241 habeas petition should be dismissed for lack of jurisdiction since Petitioner is attacking his conviction on RICO violations and his life sentence to prison. We find that Petitioner's remedy is to file a motion under 28 U.S.C. § 2255 with the trial court. Petitioner could have raised all of his above stated habeas claims in a §2255 motion. *See Wyrick v. Ebbert*, 347 Fed.Appx. 732 (3d Cir. 10-9-09). As stated, Petitioner indicates that he did not file a § 2255 motion with the trial

court. Even though Petitioner failed to file a §2255 motion this "does not render the remedy afforded by §2255 inadequate or ineffective." *Id*. at 733-734. Thus, we find that Petitioner's remedy with respect to his present claims challenging his RICO conviction is to file a § 2255 motion with the trial court.

Specifically, we find that § 2255 is an adequate and effective remedy for Petitioner to raise his instant habeas claims, namely, that the government never proved and the jury was not instructed that the government had to prove that he committed all of the elements of the charged RICO offenses. Petitioner argues that the acts he was alleged to have committed and which served, in part, as the basis for the trial court's jury instructions, namely, "conspiracy, kidnaping to murder" had no apparent overlap or connection, occurred over different periods of time, and that "all the acts stood apart" and lacked "common criminal conduct." (Doc. 2, pp. 11-12). Thus, Petitioner contends that "such activity could never establish the existence of an enterprise under the enterprise element" because an enterprise includes both legal entities and non-legal entities. (*Id*.). Petitioner cites to *U.S. v. Turkette*, 452 U.S. 576 (1981) and *Boyle v. U.S.*, 129 S.Ct. 2237 (2009).

In *U.S. v. Bergrin*, 2011 WL 1366388, *4-*5 (3d Cir. 4-12-11), the Court stated:

> The Supreme Court held in *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)—and reaffirmed in *Boyle v. United States,* ––– U.S. ––––, 129 S.Ct. 2237, 2244, 173 L.Ed.2d 1265 (2009)—that such an "[association-in-fact] enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct," and it "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.... separate and apart from the pattern of activity in which it engages." In *Boyle,* the Court added that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 129 S.Ct. at 2244. The Court also listed a number of

structural elements that the government need *not* prove to establish an "enterprise":

[A]n association-in-fact enterprise.... need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods-by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

*Id.* at 2245–46.FN5

In order to be "employed by or associated with" a RICO enterprise, a defendant must be a "person" legally distinct from the "enterprise" with which the person is employed or associated. *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001). The Supreme Court recognized in *Cedric Kushner Promotions* that one person and one wholly-owned entity can be distinct. 533 U.S. at 163, 121 S.Ct. 2087 ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that.... [L]inguistically speaking, the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." (citations omitted)). Courts have also recognized that an "association-in-fact" enterprise can exist—and satisfy the "distinctiveness" requirement—when it is comprised of members that are a mixture of individual persons and "entities that they control." *See, e.g., United States v. Masters,* 924 F.2d 1362, 1366 (7th Cir.1991) (Posner, J.) (finding an "enterprise" made up of a lawyer, his law firm, two police officers, and their respective police departments).

A "pattern of racketeering activity" is defined as "requir[ing] at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior

> act of racketeering activity." 18 U.S.C. § 1961(5). It is the "person" charged with the racketeering offense—not the entire enterprise—who must engage in the "pattern of racketeering activity." *See H.J., Inc. v. NW. Bell Tel. Co.,* 492 U.S. 229, 244, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

In Court in *U.S. v. Bergrin*, 2011 WL 1366388, *6, also stated:

> "[T]o prove a pattern ... a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. 2893 (emphasis in original). "Relatedness" can be shown through evidence that the criminal activities "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893 (quoting 18 U.S.C. § 3575(e)). Crimes can be "interrelated by [a] distinguishing characteristic [ ]" when they are "committed pursuant to the orders of key members of the enterprise in furtherance of its affairs." *United States v. Pungitore,* 910 F.2d 1084, 1104 (3d Cir.1990). "Continuity" includes "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 492 U.S. at 241, 109 S.Ct. 2893. "Closed-ended continuity" can be established "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. 2893. A finding of "open-ended continuity," on the other hand, "depends on whether the *threat* of continuity is demonstrated." *Id.* (emphasis in original). Although "[f]or analytic purposes [relatedness and continuity] ... must be stated separately, ... in practice their proof will often overlap." *Id.* at 239, 109 S.Ct. 2893.
> "Racketeering activity" is defined by 18 U.S.C. § 1961(1) to include dozens of crimes, including "any act or threat involving murder, ... bribery, ... or dealing in a controlled substance," as well as any act which is indictable under ... [18 U.S.C. §] 1343 (relating to wire fraud), ... [18 U.S.C. §] 1512 (relating to tampering with a witness, victim, or an informant), ... [and 18 U.S.C. §] 1952 (relating to racketeering)." In keeping with Congress's intent, the Supreme Court has recognized that racketeering activities of criminal enterprises are often quite diverse and can include predicate offenses ranging from loan sharking and theft to trafficking in illicit prescription drugs and counterfeiting music albums. *Turkette,* 452 U.S. at 590, 101 S.Ct. 2524 ... .

*See also In re Insurance Brokerage Antitrust Litigation*, 681 F.3d 300, 365-367 (3d Cir. 2010).

The Third Circuit Court also stated in the case of *In re Insurance Brokerage Antitrust Litigation*, 681 F.3d at 368, that:

> In short, *Boyle* holds that the RICO statute defines an "enterprise" broadly, such that the "enterprise" element of a § 1962(c) claim can be satisfied by showing a "structure," that is, a common "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 2244; *see id.* at 2245 ("[A]n association-in-fact enterprise is simply a continuing unity that functions with a common purpose."). "[A]fter *Boyle,* an association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of racketeering activity." *United States v. Hutchinson,* 573 F.3d 1011, 1021 (10th Cir.), *cert. denied,* --- U.S. ----, 130 S.Ct. 656, 175 L.Ed.2d 500 (2009).

Based on the above quotes from the Third Circuit Court in the case of *In re Insurance Brokerage Antitrust Litigation*, and in *U.S. v. Bergrin*, we do not find that Petitioner Gardner's present habeas claims challenging his RICO convictions and life sentence amount to ones that he was convicted of conduct later found to be noncriminal by a change in the law. Nor do we find that Petitioner Gardner's claims involve an intervening change in the substantive law that would negate the criminal nature of Petitioner's conduct which served as the bases for his RICO convictions.

Petitioner Gardner is trying to collaterally attack his 1997 federal life sentence in his §2241 habeas petition. "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." *Paulino v. U.S.*, 2010 WL 2545547, *2 (W.D. Pa. 6-21-10) citations omitted). Also, Petitioner Gardner's present claims fall within the purview of §2255 since they challenge the validity of his RICO convictions. *See Manna v. Schultz*, 591 F.3d 664 (3d Cir. 2010)(Third Circuit affirmed District Court's dismissal of §2241 habeas petition in which Petitioner claimed that he was innocent

10

of racketeering and related crimes for which he was convicted since §2255 motion was adequate or effective for Petitioner to raise his claims).

Notwithstanding his failure to have filed a §2255 motion raising his instant claims, we find that § 2255 is an adequate and effective remedy for Petitioner to raise his present claims.  *See Hatten v. U.S.* 2011 WL 1752249, *2 (M.D. Pa. 4-8-11) adopted by 2011 WL 175085 (M.D. Pa. 5-9-11).  In *Hatten*, the Court stated:

> A § 2255 motion is "inadequate or ineffective" only where a prisoner demonstrates "that some limitation of scope or procedure would prevent a § 2255 proceeding from affording the prisoner a full hearing and adjudication of his claim of wrongful detention." *Application of Galante, 437 F.2d 1164, 1165 (3d Cir.1971) (per curiam)* (quoting *United States ex rel. Leguillou v. Davis,* 212 F.2d 681, 684 (3d Cir.1954)). The burden is on the habeas petitioner to allege or demonstrate inadequacy or ineffectiveness. *See id.; Cagle v. Ciccone, 368 F.2d 183, 184 (8th Cir.1966)*. It is the inefficacy of the remedy, not the personal inability of the petitioner to utilize it, that is determinative. *Garris v. Lindsay*, 794 F.2d 722, 727 (D.C.Cir.1986). Courts have consistently held that a prior unsuccessful motion to vacate a sentence does not render the remedy inadequate or ineffective. *In re Vial*, 115 F.3d 1192 (4th Cir.1997) (stating the remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a § 2255 motion). Moreover, "[§ ]2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255." *Cradle v. United States ex rel. Miner*, 290 F.3d 536, 539 (3d Cir.2002).

2011 WL 1752249, *2.

Thus, simply because Petitioner Gardner did not previously file a §2255 motion with the District Court for the Eastern District of North Carolina and simply because the time period to do so may have expired, does not render this motion as inadequate or ineffective for Petitioner to raise his present claims.  *Id*.

11

We find Petitioner Gardner's present habeas claims must be raised *via* a 2255 motion. *See Blum v Holt*, 2010 WL 2926596 (M.D. Pa. 5-7-10)(Court held that it lacked jurisdiction over inmate's §2241 habeas claim that the federal sentencing court incorrectly determined that he was a career criminal for purposes of sentencing based on a prior state court conviction.); *DiFilippo v. Sniezek*, Civil No. 10-0406, M.D. Pa., aff'd. 2010 WL 3965893 (3d Cir. 10-12-10) (Court found that §2255 Motion was remedy for Petitioner who claimed that he should not have been sentenced as a career offender and that his guideline range should not have been increased, since the Supreme Court recently found that escape was not always a crime of violence for purposes of sentencing a Defendant as a career offender); *Wyrick v. Ebbert*, Civil No. 08-1922, M.D. Pa., affirmed 347 Fed.Appx. 732 (3d Cir. 2009) (Court held that Petitioner did not demonstrate that § 2255 was an inadequate remedy to test the legality of his federal CCE conviction and his life sentence); *Northrop v. Lindsay*, Civil No. 07-0574, M.D. Pa. (Court found that Petitioner should raise his §2241 habeas claim that the § 848 offense should not have been charged and that his sentence should not have been imposed under the CCE by filing a motion with the Second Circuit to file a successive § 2255 motion).

As stated, Petitioner Gardner has not previously attempted to utilize § 2255, but this does not show that § 2555 is inadequate or ineffective to raise his present habeas claims. *See Rivera v. Scism*, Civil No. 10-1773, M.D. Pa.; *Blum v Holt*, 2010 WL 2926596 (M.D. Pa. 5-7-10) adopted 2010 WL 2926593 (M.D. Pa. 7-26-10). Petitioner seems to claim that § 2255 is inadequate or unavailable in light of the fact that his 1-year statute of limitations to file a § 2255 motion has long expired. However, this does not render a motion under § 2255 as inadequate or ineffective. *See Hatten v. U.S.* 2011 WL 1752249, *2.

In *Sperling v. Hogsten*, Appeal No. 07-3032, (3d Cir. 10-19-07)(Non-Precedential), slip op. pp. 3-4, the Third Circuit stated:

> A federal prisoner can seek relief under section 2241 only if the remedy provided by section 2255 is inadequate or ineffective to test the legality of his detention. 28 U.S.C. § 2255; *Cradle v. U.S. ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002). A section 2255 motion is not "inadequate or ineffective" merely because the sentencing court has denied relief, *Cradle*, 290 F.3d at 539, or because the petitioner cannot meet the gatekeeping requirements of section 2255, *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). As noted above, Sperling has already filed three unsuccessful motions pursuant to section 2255 in the sentencing court, and at least two applications to the Second Circuit for permission to file another, all of which essentially raised the same claims he raises here. However, the fact that Sperling cannot prevail under section 2255 does not render it "inadequate or ineffective" to protect him. *See Cradle*, 290 F.3d. at 539. Therefore, the District Court properly dismissed Sperling's petition pursuant to 28 U.S.C. § 2241.

In *Green v. Apker*, 2005 WL 1138478, * 4 (M.D. Pa.), this Court stated that there is "a high bar for what a court will consider a serious constitutional issue sufficient to allow a Petitioner to bring a § 2241 petition to challenge a conviction or sentence." This Court stated that the request for relief under § 2241 must be based on newly discovered evidence or an intervening change in substantive law that would negate the criminal nature of Petitioner's conduct leading to his federal conviction. *Id*.

Based, on *Manna v. Schultz, supra*, we find that this Court is without jurisdiction to consider our Petitioner Gardner's § 2241 Habeas Petition. We find that Petitioner's recourse is to seek to file a motion under § 2255 with respect to his 1997 federal sentence. Thus, Petitioner's contention that his sentence of life imprisonment plus 120 months was impermissibly based on his improper conviction of the RICO offenses should be raised in a § 2255 motion. *See Manna v. Schultz, supra*. Petitioner must seek his relief *via* that vehicle even though he did not file previously a § 2255 motion. *Okereke,*

*supra*.

In this case, even though Petitioner did not already file a § 2255 motion regarding the sentence for which he is presently incarcerated, he does not demonstrate a personal inability to utilize this remedy. Despite the fact that he did not file a previous § 2255 motion as to his sentence, he does not establish the inadequacy or ineffectiveness of the remedy itself. S*ee Holland v. Harding*, Civil No. 95-0870, *slip op* at 4 (M.D. Pa. Nov. 21, 1995) (McClure, J.)(holding that entering into a sentencing agreement wherein the right to challenge the conviction or sentence by direct appeal or by Section 2255 motion is waived does not render a Section 2255 motion inadequate or ineffective); *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997) (denying motion for certification to file a second Section 2255 petition without prejudice to petitioner filing a Section 2241 habeas corpus petition because passage of a subsequent law may negate the crime of which he was convicted, the Third Circuit Court of Appeals stated in dicta, "[w]e do not suggest that § 2255 would be 'inadequate or ineffective' so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255.")**.**

Thus, we will recommend that the Court summarily dismiss Petitioner Gardner's Habeas Petition under Rule 4 since we find that Petitioner's recourse is to file a motion under § 2255. *See Rivera v. Scism*, 2010 WL 4919091 (M.D. Pa. 11-29-10) affirmed by 2011 WL 2909100 (3d Cir. 7-21-11)(Court held that §2255 motion was remedy for Petitioner who claimed that the identity of the controlled substance he was charged with possessing and distributing should have been treated as an element of his offenses under §860, §846 and §841 (a)(1), and that he could not be convicted and sentenced

separately for his §841(a)(1) and §860 offenses since §841(a)(1) was a lesser-included offense of §860).

Based upon the well-settled case law, we will recommend that Petitioner Gardner's Habeas Corpus Petition (Doc. 1) be dismissed for lack of jurisdiction without directing service of it on Respondent.

## V. **Recommendation.**

Based upon the foregoing, it is respectfully recommended that Petitioner Gardner's Petition for Writ of Habeas Corpus **(Doc. 1)** be dismissed, without directing service of it on Respondent, for lack of jurisdiction.

> **s/ Thomas M. Blewitt**
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: September 14, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DUSHAWN LEVERT GARDNER, | : | CIVIL ACTION NO. **1:CV-11-1312** |
| | : | |
| Petitioner | : | (Judge Caldewll |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN RONNIE HOLT, | : | |
| | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing Report and Recommendation dated **September 14, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: September 14, 2011**